EDWARD J. WYNNE (165819)
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone:   (415) 461-6400
Facsimile:    (415) 461-3900

JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA MURPHY LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Telephone:   (760) 209-6565 ext. 101
Facsimile:    (760) 209-6565

Attorneys for Plaintiffs

[ADDITIONAL COUNSEL LISTED BELOW]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| VLAD TSYN, DANIEL SILBERMANN, LORI BAGWELL, and CATHERINE HORAN WALKER, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>WELLS FARGO ADVISORS, LLC,<br><br>                Defendant. | Case No. 14-cv-02552-LB<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge: Hon. Laurel Beeler<br>Date:   May 10, 2018<br>Time:  9:30 a.m.<br>Courtroom: C, 15th  Floor |

1

**ADDITIONAL COUNSEL**

2    DAVID S. MARKUN (108067)
     dmarkun@mzclaw.com
3    Jeffrey K. Compton (142969)
     jcompton@mzclaw.com
4    MARKUN ZUSMAN FRENIERE & COMPTON LLP
     17383 Sunset Boulevard, Suite A380
5    Pacific Palisades, CA 90272
     Telephone:     (310) 454-5900
6    Facsimile:     (310) 454-5970

7    GALLO, LLP
     Ray E. Gallo (158903)
8    rgallo@gallo-law.com
     1299 Fourth Street, Suite 505
9    San Rafael, CA 94901
     Telephone:     (415) 257-8800
10   Facsimile:     (415) 257-8844

11   Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on May 10, 2018 at 9:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. Laurel Beeler, United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom C, 15th Floor, plaintiffs Vlad Tsyn, Daniel Silbermann, Lori Bagwell, and Catherine Horan-Walker will and hereby do respectfully move the court for preliminary approval of the proposed class action settlement.

Plaintiffs respectfully request that the Court (1) grant preliminary approval for the proposed class action settlement; (2) grant conditional certification of the proposed settlement class; (3) authorize the mailing of the proposed notice to the class of the settlement; and (4) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

Plaintiffs make this motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Edward J. Wynne, the Declaration of James F. Clapp, Joint Stipulation of Class Action Settlement and Release any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated:  April 26, 2018                      WYNNE LAW FIRM


                                             /s/ *Edward J. Wynne*
                                             Edward J. Wynne
                                             Attorneys for Plaintiffs

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ......................................................................................... i

INTRODUCTION ................................................................................................................................ 1

PROCEDURAL STATEMENT .......................................................................................................... 1

STATEMENT OF FACTS RELEVANT TO THE PROPOSED SETTLEMENT .............................. 4

    A.    Defendant's Business ..................................................................................................... 4

    B.    Facts Relevant to Plaintiffs' Business Expense Claims ................................................ 5

    C.    Facts Relevant to Plaintiffs' Late Payment Claims ...................................................... 6

SETTLEMENT TERMS ..................................................................................................................... 6

    A.    Settlement Fund ............................................................................................................. 7

    B.    Class Definition ............................................................................................................. 7

    C.    Class Representatives and Class Counsel ..................................................................... 7

    D.    Notice Procedure ........................................................................................................... 8

    E.    Plan of Allocation ......................................................................................................... 8

        1.    Net Settlement Fund .......................................................................................... 8

        2.    Attorney's Fees, Costs and Enhancements ....................................................... 8

        3.    LWDA payment ................................................................................................. 8

CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT .................................................. 9

    A.    The Class Meets the Requirements of Rule 23(a) ....................................................... 9

        1.    Numerosity ........................................................................................................ 9

        2.    Commonality ..................................................................................................... 9

        3.    Typicality ........................................................................................................ 10

        4.    Adequacy ........................................................................................................ 10

    B.    The Class Meets the Requirements of Rule 23(b)(3) ................................................. 10

        1.    Common Issues Predominate as to Wells Fargo's MSEAP and
            Voluntary Allocation Agreements .................................................................. 11

        2.    Common Issues Predominate as to the Timeliness of Wells Fargo's
            Commission Payments .................................................................................... 12

THE STANDARDS FOR PRELIMINARY APPROVAL ARE SATISFIED .................................. 14

    A.    The Standard for Preliminary Approval ..................................................................... 14

    B.    Strength of Plaintiffs' Case ......................................................................................... 15

    C.    The Risk, Expense, Complexity, And Likely Duration Of Further
        Litigation ..................................................................................................................... 17

    D.    The Amount Offered In Settlement ............................................................................ 17

E.    Extent of Discovery Completed......................................................................... 18

F.    Experience and View of Counsel...................................................................... 18

THE PROPOSED CLASS NOTICE IS THE BEST NOTICE PRACTICABLE ............................... 18

CONCLUSION ............................................................................................................................. 19

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Federal Cases</u>

3

*Abdullah v. U.S. Sec. Assocs., Inc.*
4        731 F.3d 952 (9th Cir. 2013) ..................................................................... 9

5  *Aguilar v. Zep, Inc.,*
        2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) ........................................ 16
6
*Boyd v. Bank of Am. Corp.*,
7        300 F.R.D. 431 (C.D. Cal. 2014) ..................................................... 11, 17

8  *Buchanan v. HomeServices Lending, LLC*,
        2013 WL 1788579 (S.D. Cal. Apr. 25, 2013) ......................................... 16
9
*Churchill Village, LLC v. General Electric*,
10       361 F.3d 566 (9th Cir. 2004) ................................................................... 19

11  *Gautreaux v. Pierce*,
        690 F.2d at 616 (7th Cir. 1982) ............................................................... 14
12
*Hammon v. Barry*,
13       752 F. Supp. 1087 (DDC 1990) ............................................................... 18

14  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ..................................................... 10, 13, 15
15
*Hopkins v. Stryker Sales Corp.*,
16       2012 WL 1715091 (N.D. Cal. May 14, 2012) ........................................... 9

17  *In re Armored Car Anti - Trust Litigation*,
        472 F. Supp. 1357 (ND GA 1979) ........................................................... 18
18
*In re General Motors Corp.*,
19       55 F.3d 768 (3rd Cir.1995) ...................................................................... 17

20  *In re Traffic Executive Association-Eastern Railroads*,
        627 F.2d 631 (2d Cir. 1980) .................................................................... 14
21
*In Re Wells Fargo Home Mortg.*,
22       571 F.3d 953 (9th Cir.2009) .................................................................... 11

23  *Lerwill v. Inflight Motion Pictures, Inc.*,
        582 F.2d 507 (9th Cir. 1978) ................................................................... 10
24
*Levya v. Medline Indus. Inc.*,
25       716 F.3d 510 (9th Cir. 2013) ................................................................... 11

26  *Linney v. Cellular Alaska Partnership*,
        151 F.3d 1234 (9th Cir. 1998) ................................................................. 14
27
*Marr v. Bank of Am.*,
28       No. 09–cv–05978 WHA, 2011 WL 845914 (N.D. Cal. Mar. 8, 2011) ...... 11

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

*Nguyen v. Wells Fargo Bank*,
   No. 15-CV-05239-JCS, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016) .............................. 11, 16

*Novak v. The Boeing Company*,
   2011 WL 9160940 (C.D. Cal. Jul. 20, 2011) ....................................................................... 15

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .............................................................................................. 14

*Overton v. Hat World, Inc.*,
   2012 U.S. Dist. LEXIS 144116 (E.D. Cal. 2012) ................................................................ 19

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
   79 F.R.D. 571 (ED PA 1978) .............................................................................................. 18

*Steinberg v. Carey*,
   470 F. Supp. 471 (NY 1979) ............................................................................................... 18

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ................................................................................................. 9

*Stuart v. RadioShack Corp.*,
   641 F.Supp.2d 901 (N.D. Cal. 2009) .................................................................................. 11

*Takacs v. A.G. Edwards & Sons, Inc.*,
   444 F. Supp. 2d 1100 (S.D. Cal. 2006) ............................................................................... 11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................................. 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2nd Cir. 2005) ................................................................................................ 14

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .............................................................................................. 9

*Wit v. United Behavioral Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) .......................................................................................... 9

**State Cases**

*Duran v. U.S. Bank Nat. Assn.*,
   59 Cal. 4th 1 (2014) ...................................................................................................... 11, 17

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
   42 Cal.4th 554 (2007) ........................................................................................................ 11

*General Tel. Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) ........................................................................................................... 10

*Grissom v. Vons Companies, Inc.*,
   1 Cal.App.4th 52 (1991) ..................................................................................................... 11

*Koehl v. Verio, Inc.*,
    142 Cal.App.4th 1313 (2006) ............................................................................... 13

*Morgan v. Wet Seal*,
    210 Cal.App.4th 1341 (2012) ............................................................................... 16

*Peabody v. Time Warner Cable, Inc.*,
    59 Cal.4th 662 (2014) ............................................................................... 12, 16

## Statutes, Rules & Regulations

26 U.S.C.
    § 162 ............................................................................... 12, 15

California Labor Code
    § 200 ............................................................................... 12

California Labor Code
    § 204 ............................................................................... *passim*

California Labor Code
    § 2802 ............................................................................... *passim*

Federal Rule of Civil Procedure
    23 ............................................................................... *passim*

## Other Authorities

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice & Procedure § 1778 (2d ed. 1986) ............................................. 10

DLSE Manual
    § 34.9 ............................................................................... 13

Herr, *Manual for Complex Litigation, Fourth*,
    § 21.632 (2004) ............................................................................... 14

## INTRODUCTION

Plaintiffs Vlad Tsyn, Daniel Silbermann, Lori Bagwell, and Catherine Horan-Walker ("Plaintiffs") seek preliminary approval of this $9,500,000 non-reversionary settlement between Plaintiffs and Defendant Wells Fargo Advisors, LLC. ("Defendant" or "WFA"). The proposed settlement before this Court will dispose of this case.

This proposed settlement is presented by Plaintiffs on behalf of themselves and all other employees that WFA employed as Financial Advisors in California from March 28, 2010 through January 19, 2018. Plaintiffs had originally alleged that Defendant had misclassified its Financial Advisors as exempt from overtime compensation under both state and federal law as well as derivative state law claims. Plaintiffs' misclassification claims were dismissed pursuant to a motion brought by Defendant. Plaintiffs' surviving claims allege that Defendant did not reimburse its Financial Advisors for all business-related expenses in violation of California Labor Code § 2802 and that it did not timely pay commissions to its Financial Advisors in violation of California Labor Code § 226. Plaintiffs also seek civil penalties for the Labor Code violations on behalf of themselves and other allegedly aggrieved employees under Labor Code § 2699 *et seq.*, the Labor Code Private Attorneys General Act ("PAGA").

Plaintiffs submit that the proposed settlement is fair, reasonable and adequate and that the standards for certification of the proposed class in the context of a settlement are satisfied.

## PROCEDURAL STATEMENT

On March 28, 2014, Plaintiff Vlad Tsyn filed this action in the Marin County Superior Court alleging various wage-related claims against Defendant Wells Fargo Advisors LLC ("Defendant" or "Wells Fargo"). The lawsuit was styled as a class action on behalf of California financial advisors and a nationwide collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* on behalf of Financial Advisors ("FAs") throughout the United States. (ECF 1-1.) After an amendment to add a cause of action under Labor Code § 2699, Defendant removed the action to this Court on June 3, 2014. (ECF 1.)

Soon after the initial filing, Plaintiffs engaged in extensive informal discovery including setting up a website to inform putative class members about the claims and proceedings and to gather information. (Decl. of Wynne.) Plaintiffs caused newsletters to be sent to FAs informing them of the

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

case and directing them to the website. (Decl. of Wynne.) As a result of Plaintiffs' informal discovery efforts, Plaintiffs were able to gather evidence and declarations in order to prosecute the action. (Decl. of Wynne.)   In total, Plaintiffs' counsel interviewed, either in person, by telephone, or via questionnaire, more than 110 FAs about their potential claims. (Decl. of Wynne.)

Subsequent to the Initial Case Management Conference on September 11, 2014 (ECF 18), the parties initiated formal discovery. During the course of this litigation, Plaintiffs propounded three sets of Special Interrogatories and four sets of Document Requests. (Decl. of Wynne.) In response to Plaintiffs' written discovery, Defendant produced over 45,000 documents. (Decl. of Wynne.) Plaintiffs also took 6 depositions of Defendant's representatives pursuant to Plaintiffs' Rule 30(b)(6) deposition notice.

For its part, Defendant served two sets of Special Interrogatories and two sets of Document Request consisting of 41 requests of production. (Decl. of Wynne.) In response to Defendant's discovery requests, Plaintiffs Tsyn and Horan-Walker (to whom the discovery was directed) produced over 400 documents. (Decl. of Wynne.) Defendant also took the depositions of Plaintiffs Tsyn and Horan-Walker.

On April 10, 2015, Plaintiff filed a Second Amended Complaint which added a cause of action alleging violations of California Labor Code §§ 204 and 226. (ECF 29.)

On September 24, 2015, Plaintiff Tsyn brought a Motion for Conditional Certification of the nationwide FLSA claims of FAs. (ECF 41, 54.)

On October 7, 2015, Plaintiff Tsyn filed an unopposed motion to amend the complaint to add three additional class representatives. (ECF 48.) During the course of discovery, Plaintiffs determined that Defendant divided its business into various divisions. Plaintiff Tsyn and new plaintiff Horan-Walker worked in the Wealth Brokerage Services (WBS) division while newly added plaintiffs Bagwell and Silberman worked in the Private Client Group (PCG). (Decl. of Wynne.) On October 21, 2015, the motion to amend was granted. (ECF 57.)

Plaintiffs' Third Amended Complaint (ECF 58) made the following claims: (1) FAs throughout the nation are misclassified as exempt employees under the FLSA and should have instead been classified as non-exempt and compensated for overtime hours worked (a putative, national opt-in,

1   collective action); (2) FAs in California are misclassified as exempt under California law and should

2   have instead been classified as non-exempt and compensated for overtime hours worked (a putative

3   Rule 23, opt-out California class); (3) FAs in California are required personally to incur business

4   expenses that are necessary and reasonable but not reimbursed (a putative Rule 23, opt-out California

5   class); (4) FAs in California are subject to unlawful deductions from their compensation; (5) formerly

6   employed FAs in California were not properly and/or timely paid at termination and not provided with

7   accurate wage statements; and, (6) FAs in California are not paid their commission wages in a timely

8   manner and not provided with accurate wage statements (a putative Rule 23, opt-out California class).

9       On November 12, 2015, the parties appeared for a Case Management Conference where the

10  Court set a further Case Management Conference to discuss the discovery issue raised by Plaintiffs

11  related to a privacy notice. (ECF 67.)

12      On November 19, 2015, in conjunction with its opposition to Plaintiffs' Motion for Conditional

13  Certification, Defendant brought a Motion for Summary Judgment as to Plaintiff Tsyn's claims for

14  misclassification under the FLSA. (ECF 70.)  Subsequent to the addition of Horan-Walker as a named

15  plaintiff, Defendant filed a similar Motion for Summary Judgement as to Horan-Walker's claim under

16  the FLSA. (ECF 85.)

17      On December 11, 2015, the Court issued a discovery and case management order following the

18  Case Management Conference on December 10, 2015 wherein the issues surrounding the privacy

19  notice were resolved. (ECF 76.)

20      On January 28, 2016, Plaintiffs' Motion for Conditional Certification and Defendant's two

21  Motions for Summary Adjudication were heard. After taking the matters under submission, on

22  February 16, 2016, this Court granted Defendant's motions and denied Plaintiffs' motion as moot.

23  (ECF 105.)

24      On March 9, 2016, Plaintiffs brought a Motion for Judgment pursuant to Rule 54(b) in order to

25  pursue an interlocutory appeal. On April 29, 2016, the Court denied Plaintiffs' Motion for Interlocutory

26  Appeal finding that the "first and maybe most compelling consideration" warranting denial of

27  Plaintiffs' Rule 54(b) motion was that "the dismissed FLSA claim 'overlaps' almost entirely with the

28  pending California state-law overtime claims." (ECF 120 at p. 3.)

On May 19, 2016, Plaintiffs brought a Motion for Leave to file a Motion for Reconsideration. (ECF 125.) In conjunction with Plaintiffs' Motion, Plaintiffs amended their complaint via stipulation to dismiss without prejudice the causes of action alleging misclassification under California law. (ECF 128.)

On June 23, 2016, the parties appeared and argued Plaintiffs' Motion for Reconsideration. On June 27, 2016, the Court denied Plaintiffs' Motion for Reconsideration. (ECF 137.)

On August 11, 2016, the parties appeared for a further Case Management Conference to set a further briefing schedule related to certification of Plaintiffs' remaining claims. (ECF 144.) Plaintiffs continued to conduct discovery focused on Defendant's business expense policies and procedures as well as its payroll practices including written discovery and taking Defendant's deposition. (Decl. of Wynne.)

After Plaintiffs had completed their discovery on Defendant's business expense policies and practices and payroll practices, the parties participated in an arm's-length mediation with David Rotman, Esq. on October 19, 2017 where they were able to reach a settlement that resolves this matter. In preparation to the mediation, Defendant provided additional data relevant to Plaintiffs' Labor Code § 2802 claim, specifically, the gross amount putative class members have paid into Defendant's Mandatory Supplemental Expense Allowance Program (MSEAP) and the amount paid toward a Voluntary Allocation Agreement, i.e., payments for Client Associates by Financial Advisors, during the class period. (Decl. of Wynne.)

## STATEMENT OF FACTS RELEVANT TO THE PROPOSED SETTLEMENT

**A.    Defendant's Business**

Wells Fargo Clearing Services LLC (dba Wells Fargo Advisors, LLC) is a wholly-owned subsidiary of Wells Fargo & Co., which is a financial holding company and bank holding company. Wells Fargo & Co. has three operating segments: Community Banking; Wholesale Banking; and Wealth, Brokerage and Retirement. Wells Fargo Clearing Services LLC is a division within the Wealth, Brokerage and Retirement segment. Wells Fargo Clearing Services LLC is in turn organized into three divisions: an independent brokerage group, the Private Client Group (PCG), and Wealth Brokerage Services (WBS).

1    WBS Financial Advisors work in Wells Fargo bank branches and primarily serve banking

2    clients, whereas PCG Financial Advisors work in stand-alone branches and principally serve private

3    investor and often higher net worth individuals. Although there are some differences in how WBS and

4    PCG Financial Advisors originate their clients, WBS and PCG operate under the same expense

5    reimbursement policies and their compensation plans are similar.

6        There are 2,198 current and former Financial Advisors covered by this proposed settlement, all

7    of whom were employed by Defendant in California. (Decl. of Wynne.)

8    **B.    Facts Relevant to Plaintiffs' Business Expense Claims**

9        Plaintiffs focused on two types of business expenses: (1) expenses that are reimbursed under a

10   program known as the Mandatory Supplemental Expense Allowance Program ("MSEAP"); and (2)

11   adjustments to the compensation of Financial Advisors in connection with payments made to Client

12   Associates to supplement their income.

13       With respect to the MSEAP, prior to the beginning of the calendar year, the Financial Advisor

14   and his or her branch manager decide how much the Financial Advisor should spend on business

15   expenses that year.  The Financial Advisor then agrees to allocate a portion of his or her commissions

16   on a pre-tax basis to an MSEAP account to fund the business expenses.  Throughout the year, the

17   Financial Advisor submits business expenses to the branch manager. Expenses that are eligible for

18   reimbursement from the MSEAP account include such items as travel expenses, continuing education

19   expenses, licenses and professional fees, publications and subscriptions, office equipment and software,

20   marketing expenses, and seminar expenses.  Financial Advisors are also able to allocate a portion of

21   their MSEAP account to their Client Associates and may do so for a discretionary year-end bonus.  The

22   branch manager reviews each expense to ensure it is a legitimate business expense and is not excessive.

23   The accounting department also reviews the expense to ensure it is tax deductible.  If the expense is

24   approved, it is reimbursed to the Financial Advisor from the MSEAP account; if not, the Financial

25   Advisor must bear the expense on his or her own.  Any funds remaining in the MSEAP at the end of the

26   calendar year are forfeited to Defendant.

27       According to data provided by Defendant, from 2010 through 2016, Financial Advisors

28   allocated a total of $38 million of their pre-tax commission wages into the MSEAP, of which $37.4

1  million was spent on business expenses and $600,000 was forfeited to Defendant. (Decl. of Wynne.)

2       Wells Fargo contends that this program is not only permissible but actually beneficial to the

3  Financial Advisors at issue, who as stated above, work with their branch managers to determine if they

4  will participate in the first place.  Wells Fargo further contends that it reimburses Financial Advisors

5  for all reasonable and necessary expenses directly, and this program allows Financial Advisors the

6  ability to use pre-tax dollars for qualifying, additional expenses that may benefit their business.

7       With respect to payments made to Client Associates, if the individual is licensed, then he or she

8  can receive a percentage of the Financial Advisor's gross commissions; if not, the Client Associate can

9  receive a set quarterly amount. In either case, the arrangement is memorialized in a document called a

10  "Voluntary Allocation Agreement." Plaintiffs' position is the Client Associate payments are

11  reimbursable business expenses. Defendant's position is that the payments are voluntary on the

12  Financial Advisor's part and constitute consideration for additional support above and beyond the

13  necessary and reasonable support levels, which are already provided by Wells Fargo. According to data

14  provided by Defendant, from 2010 to 2016, Client Associates received a total of $126.7 million under

15  these arrangements. (Decl. of Wynne.)

16  **C.**     **Facts Relevant to Plaintiffs' Late Payment Claims**

17       Wells Fargo issues paychecks once every two weeks, for a total of 26 paychecks per year.

18  Generally, the first paycheck is issued around the 12th of the month and consists of one-half the

19  Financial Advisor's monthly draw. The second paycheck, issued around the 26th of the month, consists

20  of one-half the Financial Advisor's monthly draw as well as the commissions earned in the prior

21  month, less the full monthly draw amount.  Wells Fargo contends that this timing is lawful because the

22  wages are paid in the pay period following that in which they are earned and that it would be

23  administratively impractical to pay the amounts sooner.  Wells Faro further contends that Financial

24  Advisors have the option to receive payments in advance of this pay schedule based on estimates, and

25  relatively few Financial Advisors select this option.

26  **SETTLEMENT TERMS**

27       The details of the settlement are set forth in the Stipulation Re: Settlement of Class Action. (Ex.

28  1, Decl. of Wynne.) A summary is set forth below:

## A.      Settlement Fund

In return for a release of all claims that were asserted in the action, Defendant shall create a non-reversionary $9,500,000 gross settlement fund. After certain deductions identified below, all class members will be paid on a pro rata basis based on the number of months they worked for Defendant as a Financial Advisor in California during the settlement period, which extends from March 28, 2010 through January 19, 2018. This allocation formula—i.e., calculating settlement payments based on the number of months worked—has been adopted in other broker reimbursement cases that have settled in this District. (Decl. of Wynne.)

In addition, Defendant will pay for the cost of settlement administration which is estimated to be approximately $50,000.

The deductions from the gross settlement fund include attorneys' fees and costs, class representative enhancement awards, payment to the California Labor Workforce Development Agency, and the employees' share of payroll taxes.

## B.      Class Definition

Subject to Court approval, the parties have stipulated to certification for settlement purposes only of a class defined as any individual employed by Defendant in California as a Financial Advisor in either the PCG division or WBS division at any time from March 28, 2010 through January 19, 2018. Wells Fargo has reserved its right to contest class certification in the event that the settlement is not approved and litigation resumes.

## C.      Class Representatives and Class Counsel

Subject to Court approval and for settlement purposes only, the parties have stipulated that plaintiffs Vlad Tsyn, Daniel Silbermann, Lori Bagwell, and Catherine Horan Walker be appointed class representatives. All Plaintiffs worked as Financial Advisors for Defendant in California during the class period in either the WBS division or the PCG division. Also subject to Court approval, the parties have stipulated that Edward J. Wynne, Wynne Law Firm; James F. Clapp, Clapp & Lauinger LLP; David S. Markun and Jeffrey K. Compton, Markun Zusman Freniere & Compton LLP; and Ray E. Gallo, Gallo, LLP, be appointed class counsel.

1   **D.      Notice Procedure**

2        Subject to Court approval, the parties have agreed on Rust Consulting, Inc. as the Claims

3   Administrator. After updating the database provided by Defendant through the National Change of

4   Address database, the Claims Administrator will mail the Class Notice to each class member.   The

5   Class Notice shall include a pre-printed change of address form and instructions on how to opt-out of or

6   object to the settlement. With the exception of remailings due to returned Class Notices, no other

7   materials will be sent to class members.  Because this is not a claims-made settlement, Class Members

8   will not be required to make a submission to participate in the settlement.

9   **E.      Plan of Allocation**

10       **1.      Net Settlement Fund:** The Net Settlement Fund is estimated to be $6,163,334.

11  Payments to individual class members shall be calculated and apportioned from the Net Settlement

12  Amount based on the amount of work months during the settlement class period.  It is estimated that

13  there are 130,633 work months covered by this settlement. (Decl. of Wynne.)   Therefore, class

14  members can expect to receive approximately $47.18 per work month after fees and costs. The average

15  amount of time an FA was employed during the class period is 59 months. Thus, on average, FAs can

16  expect to receive $2,783 after fees and costs. (Decl. of Wynne.)

17       **2.      Attorney's Fees, Costs and Enhancements:** Pursuant to the parties' agreement,

18  Plaintiffs' counsel will be asking the Court to award 33% of the settlement fund or $3,166,666, plus

19  costs of $100,000.  In addition, Plaintiffs are asking for enhancements in the amount of $15,000 each to

20  plaintiffs Tsyn and Horan-Walker and $10,000 each to plaintiffs Silberman and Bagwell. The

21  differentiation is due to the fact that plaintiffs Tsyn and Horan-Walker had their depositions taken.

22  (Decl. of Wynne.)

23       **3.      LWDA payment:** The parties have agreed to pay the LWDA $20,000 per Labor Code §

24  2699 (i) to settle this claim, and the parties have submitted or will submit this settlement to the

25  California Labor Workforces Development Agency ("LWDA") per California Labor Code section

26  2699(l)(2).

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1

## CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT

2 **A.    The Class Meets the Requirements of Rule 23(a)**

3        Plaintiffs submit that the proposed settlement class meets the requirements for certification

4 under Fed.R.Civ.P. 23.[1] A court should certify a class if the following prerequisites are met: "(1) the

5 class is too numerous, making joinder of the parties impracticable; (2) common questions of law or fact

6 exist among the class members; (3) the claims of the class representatives are typical of the claims of

7 the class; and (4) the class representatives will adequately represent the interest of the class." *Walters v.*

8 *Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998). Plaintiffs contend that, in the context of settlement, each of

9 these requirements is met.

10        **1.    Numerosity**

11        Fed.R.Civ.P.23(a)(1) requires that the class be "so numerous that joinder of all members is

12 impracticable." In *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), the court observed that if

13 a class exceeds 40 members, the numerosity requirement is satisfied. Here, the class exceeds 2,200.

14        **2.    Commonality**

15        Rule 23(a) requires the presence of a single key common question that is capable of class-wide

16 resolution. *Abdullah v. U.S. Sec. Assocs., Inc.* 731 F.3d 952, 957 (9th Cir. 2013); *Wit v. United*

17 *Behavioral Health*, 317 F.R.D. 106, 121 (N.D. Cal. 2016). Judge Lucy Koh observed, "District courts

18 throughout this circuit have found that commonality is met when, as here the proposed class of

19 plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary

20 business expenses in violation of Cal. [sic] Bus. Code § 2802." *Hopkins v. Stryker Sales Corp.¸* 2012

21 WL 1715091, *5 (N.D. Cal. May 14, 2012). Plaintiffs allege the same is true here. Whether Wells

22 Fargo's charging its FAs for business expenses such as marketing and payments to Client Associates

23 violates Cal. Labor Code § 2802 and whether its schedule for paying commissions violates Cal. Labor

24 Code § 204 provide common questions that unite the class. Plaintiffs submit that the resolution of these

25 common questions turn on testimony from Defendant's corporate representatives, the legal

26
_____

27 [1]   Once again, Wells Fargo has reserved its right to contest class certification on any and all grounds
should the settlement not be approved and litigation resumes, and Plaintiffs have agreed not to pursue
28 arguments that Wells Fargo cannot so contest certification.

interpretation of Defendant's Financial Advisor Compensation Plan, and Defendant's payroll policies and procedures. As such, Plaintiffs submit that the commonality requirement is satisfied.

### 3.      Typicality

A class representative's claims are typical if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). All of the Plaintiffs were employed by Defendant as Financial Advisors at either WBS or PCG in California during the class period and at some point three of the four plaintiffs allocated a portion of their compensation to either MSEAP or through a Voluntary Allocation Agreement. (Decl. of Wynne) Typicality is therefore satisfied.

### 4.      Adequacy

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs have no interests that are antagonistic to those of the other class members because none have brought claims that are separate from the class claims. Also, Plaintiffs have retained counsel who is experienced in employment class actions. (Decl. of Wynne; Decl. of Clapp.)

## B.      The Class Meets the Requirements of Rule 23(b)(3)

Plaintiffs contend that the requirements of Rule 23(b)(3) are satisfied because: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Rule 23(b)(3) tests whether "common questions present a significant aspect of the case and they

can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)). The presence of some individualized issues, such as damages, does not preclude a finding that common issues predominate. *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). In wage and hour cases, courts have found that predominance is satisfied where, as shown here, liability will be determined based on the lawfulness of class-wide, written policies. *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014) citing *In Re Wells Fargo Home Mortg.*, 571 F.3d 953, 958–59 (9th Cir.2009) ("uniform corporate policies will often bear heavily on questions of predominance and superiority."); *see also, Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 30 (2014) ("an employer's uniform policy or consistent practice" supports certification).

> **1.   Common Issues Predominate as to Wells Fargo's MSEAP and Voluntary Allocation Agreements**

California protects employees by providing that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…" Labor Code § 2802 (a). Section 2802, subsection (c) defines the term "necessary expenditures or losses" as "all reasonable costs…" This Court in this case has observed: "'Necessity is by nature a question of fact' and that 'the reasonableness of any given expenditure must turn on its own facts.'" *Nguyen v. Wells Fargo Bank*, No. 15-CV-05239-JCS, 2016 WL 5390245, at *9 (N.D. Cal. Sept. 26, 2016) *quoting Grissom v. Vons Companies, Inc*., 1 Cal.App.4th 52, 58 (1991).  In order for an expense to be "necessary" under section 2802, it need not be mandatory. *Id.* citing *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1104 (S.D. Cal. 2006).

The elements of a claim under Labor Code § 2802 are: (i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary. *Marr v. Bank of Am.,* No. 09–cv–05978 WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) citing *Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal.4th 554, 568, (2007). "In addition, the employer 'must either know or have reason to know that the employee has incurred [the] expense.'" *Id.* citing *Stuart v. RadioShack Corp.,* 641 F.Supp.2d 901 (N.D. Cal.

2009).

With respect to the MSEAP, there is no dispute that FA's made the expenditures, that the expenditures were made in discharging their duties or that Defendant knew the expenditures were made. The disagreement between the parties is whether the expenditures were reasonable and necessary. Plaintiffs contend that because Wells Fargo has already determined that the expenditures were "ordinary and necessary" for tax deductibility purposes per 26 U.S.C. § 162(a), Defendant has already determined that the expenditures are reimbursable under Labor Code § 2802 as "reasonable and necessary." Defendant contends that a determination of an expenditure as "ordinary and necessary" for purposes of deductibility is not equivalent to a determination that the expense is "reasonable and necessary" under the Section 2802. Plaintiffs disagree, but Plaintiffs submit that the resolution of this dispute is purely legal and constitutes a predominant common question satisfying Rule 23.

With respect to the Voluntary Allocation Agreement issue, there is likewise no dispute that FA's made the allocations, that the allocations were made in order to discharge their duties or that Defendant knew the expenditures were made. As with the MSEAP, the disagreement between the parties lies in whether the allocations were "necessary and reasonable."  Plaintiffs contend that because allocations to Client Associates can be made through the MSEAP, the same analysis above applies to the Voluntary Allocation Agreement and therefore predominance is satisfied.

With respect to the Client Associate allocations, Defendant contends that it provides a level of support to FAs that is reasonably necessary for them to perform their duties and responsibilities and if they choose to have an enhanced level of support beyond what is provided by firm, then that is the choice of the FA. Again, Plaintiffs disagree, but contend that the question of whether or not Wells Fargo provides a level of support that is "reasonably necessary" frames an additional predominant common question satisfying Rule 23.

### 2.  Common Issues Predominate as to the Timeliness of Wells Fargo's Commission Payments

Labor Code § 204 (a) provides in relevant part, "[a]ll wages … earned by any person in any employment are due and payable twice during each calendar month …." The California Supreme Court, in *Peabody v. Time Warner Cable, Inc.*, 59 Cal.4th 662 (2014), observed that the term "wages"

for purposes of Section 204 includes "'all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis*, or other method of calculation.'" *Id.* at 668, quoting Labor Code § 200 (a) (emphasis in original). Thus, earned commissions, like any other wages, must be paid semimonthly. *Id.* Further, commissions are not earned or owed until agreed-upon conditions have been satisfied, and such satisfaction often may occur on a monthly or less frequent basis. *Id.*

The fundamental principles governing when commissions are earned are:

> A commission is 'earned' when the employee has perfected the right to payment; that is, when all of the legal conditions precedent have been met. Such conditions precedent are a matter of contract between the employer and employee, subject to various limitations imposed by common law or statute.

*Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1335 (2006). Further, the DLSE has observed: "The provisions of any contract notwithstanding, California courts will not enforce unlawful or unconscionable terms and will construe any ambiguities against the person who wrote the contract (usually the employer) to avoid a forfeiture." DLSE Manual § 34.9 (internal cite omitted).

Plaintiffs contend that whether Wells Fargo violated Section 204's semimonthly schedule will turn on the class-wide issue of when FAs earned their commissions. Wells Fargo contends that it cannot pay the commissions until the second pay period of the following month from when the commissions are generated because it is not administratively possible to calculate the amounts due. Under the terms of Compensation Plan, among other factors, the commissions are not "earned" until they are calculable. Plaintiffs, on the other hand, contend that commissions are in fact earned at the end of the performance period because once the trades are settled or fees paid, there is nothing more for the FA to do on that transaction. Further, Plaintiffs contend that the commissions are calculable prior to the second pay period of the following month in which the commissions are generated because there is no reason the calculations cannot be done at an earlier time from Plaintiffs' perspective. Thus, Plaintiffs contend that the question of whether or not it is reasonable to pay the commissions when Wells Fargo deems the commissions calculable presents a predominant common question also satisfying Rule 23.

The superiority prong under Rule 23(b)(3) involves a comparison of the potential alternative mechanisms for resolving the dispute. *Hanlon*, 150 F.3d at 1023. In this case, the only alternative to a

1  class action would be thousands of individual actions. As a practical matter, if this case is not certified,

2  none of the wages will ever be recovered. Accordingly, a class action is superior.

**THE STANDARDS FOR PRELIMINARY APPROVAL ARE SATISFIED**

3

4  **A.     The Standard for Preliminary Approval**

5       The "universal standard" in evaluating the fairness of a settlement is whether the settlement is

6  "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d

7  615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a private consensual

8  agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

9  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

10  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

11  adequate to all concerned." *Id*.

12       As the Ninth Circuit has recognized, "the very essence of a settlement is compromise." *Id*. at

13  624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

14  litigation that induce consensual settlements. The proposed settlement is not to be judged against a

15  hypothetical or speculative measure of what might have been achieved by the negotiators." *Linney v.*

16  *Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998). Even if the amount of a proposed

17  monetary settlement is a fraction of the potential recovery, that does not necessarily mean the

18  settlement is inadequate. *Id*.

19       Court approval of a class action settlement is a two-step process. First, counsel submits the

20  proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation. If

21  the preliminary evaluation of the settlement does not disclose a basis to doubt its fairness or other

22  obvious deficiencies, the court directs that notice be given to the class and sets a final fairness hearing.

23  Herr, *Manual for Complex Litigation, Fourth*, § 21.632 (2004).

24       Preliminary approval should be granted if the proposed settlement falls "within the range of

25  possible final approval." *Gautreaux v. Pierce,* 690 F.2d at 616, 621 n.3 (7th Cir. 1982). Preliminary

26  approval is "a determination that there is what might be termed 'probable cause' to submit the proposal

27  to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-*

28  *Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

A proposed settlement is presumed to be fair when: it is reached through arm's-length negotiations; the putative class is represented by experienced counsel; and the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). Here, all of the factors giving rise to a presumption of fairness exist. The proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by an experienced mediator; the class is represented by experienced counsel; and the parties have conducted sufficient discovery. (Decl. of Wynne.) Thus, the settlement is presumed to be fair.

The Ninth Circuit has also suggested that district courts consider the following factors in evaluating the fairness of a class action settlement: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The relative degree of importance to be attached to any particular factor depends upon the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Here, the pertinent factors weigh in favor of granting preliminary approval.

**B.      Strength of Plaintiffs' Case**

With respect to the MSEAP claim, Plaintiffs are not aware of any court (or administrative body) being asked to decide whether an employer's representation to the IRS that an expense is tax deductible ("ordinary and necessary" under 26 U.S.C. § 162(a)) is a binding admission for purposes of the employee's request for reimbursement under Labor Code § 2802(a). The lack of any prior rulings or decisions in Plaintiffs' favor on this issue is an argument in support of Defendant's position that the two standards are not equivalent.

With respect to the Voluntary Allocation claim, Defendant will argue that the expenses were optional and therefore not "reasonable and necessary." Some courts have found that optional business expenses are not reimbursable. For instance, in *Novak v. The Boeing Company*, 2011 WL 9160940 (C.D. Cal. Jul. 20, 2011), the employee sought reimbursement for expenses that certainly were reasonable and job related – the cost of telephone and internet used to perform his job duties from his

1   home office. The court held, however, that the employer was not required to reimburse because the

2   entire "work at home" program was optional and the employee could instead have come into the office

3   to perform his job duties to avoid expenses. *See also, Aguilar v. Zep, Inc.,* 2014 WL 4245988 (N.D.

4   Cal. Aug. 27, 2014) (partially granting defendant's motion for summary judgment on plaintiff's Section

5   2802 claims finding that some of the business expenses plaintiffs incurred were not required and thus

6   optional).

7        With respect to the Section 204 claim, commissions are not earned until the agreed-upon

8   conditions have been satisfied. *Peabody v. Time Warner Cable, Inc.*, 59 Cal.4th 662, 668 (2014).

9   Defendant is likely to argue that one of the conditions set forth in the FAs' Compensation Plan is that

10  the commissions are calculable. It is likely that Defendant's position is that it cannot reasonably

11  calculate the commissions well into the month following the performance period (i.e., the prior month)

12  because the trades may not have settled or there may be changes to the trades due to such things as

13  errors or client-initiated reversals which would necessitate a recalculation in the commission due the

14  FA.

15       In addition to the strength of Plaintiffs' case, there is also the question of class certification.

16  Some courts have denied certification of Section 2802 claims especially when it has been found that the

17  expenses were optional. See, e.g., *Buchanan v. HomeServices Lending, LLC*, 2013 WL 1788579 (S.D.

18  Cal. Apr. 25, 2013) (class certification denied for optional marketing programs); see also, *Morgan v.

19  Wet Seal*, 210 Cal.App.4th 1341, 1356-57 (2012) (class certification denied on Section 2802 claim

20  where individualized issue predominated on whether employees reasonably believed they had to

21  participate in programs to do their jobs).   Indeed, in *In re RBC Dain Rauscher Overtime Litig.*, 703 F.

22  Supp. 2d 910 (D. Minn. 2010), the court denied certification of a similar claim under California law

23  against another brokerage firm, holding that "[t]o determine whether RBC violated § 2802 of the

24  California Labor Code for failure to reimburse employees for necessary expenses, the Court must

25  examine each employee's alleged expenses and must determine whether they were 'reasonable.'" *Id.* at

26  969.

27       Furthermore, certification at the trial court level is no guarantee of success. In *Huy Nguyen v.

28  Wells Fargo Bank, Nat'l Ass'n*, No. 15-CV-05239-JCS, 2017 WL 4224930 (N.D. Cal. Sept. 22, 2017),

1  another case being prosecuted by counsel herein, Judge Spero of this Court granted plaintiff's motion

2  for class certification where plaintiff alleged claims under the same Labor Code provisions at issue in

3  this case, i.e., sections 2802 and 204, and against another business segment of the same defendant. On

4  December 20, 2017, the Ninth Circuit granted defendant's request to appeal the order. The matter is

5  currently being briefed.

6  **C.     The Risk, Expense, Complexity, And Likely Duration Of Further Litigation**

7          To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must

8  weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in

9  continued litigation. *In re General Motors Corp.,* 55 F.3d 768, 806 (3rd Cir.1995) ("The present value

10  of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not

11  prevailing, should be compared with the amount of the proposed settlement."); *Boyd v. Bechtel Corp.,*

12  485 F. Supp. 610, 616-17 (N.D. Cal.1979).

13          This factor supports preliminary approval here. This counsel's experience in *Duran v. U.S.*

14  *Bank N.A.*, 59 Cal.4th 1 (2014) perhaps best exemplifies the risk, expense, complexity and duration of

15  further litigation. Counsel herein was successful in obtaining certification for that case and

16  subsequently prevailed at trial after eight years of litigation only to have the entire judgment and

17  certification ultimately reversed by the California Supreme Court after an additional five years of

18  litigation. (Decl. of Wynne.) The case was remanded back to the Superior Court where class

19  certification was denied and plaintiffs' subsequent appeal was denied. (Decl. of Wynne.) Even

20  prevailing at the trial court is no guarantee of recovery especially against a large corporate defendant

21  like Wells Fargo. In essence, the risk in continued litigation is extremely high. Thus, it is Counsels'

22  informed opinion that benefits of this settlement outweigh the risk and that settlement at this juncture is

23  in the best interests of the class.

24  **D.     The Amount Offered In Settlement**

25          The gross settlement amount is $9,500,000 with the net amount being $6,163,334 after

26  deductions for fees, costs, enhancements and the LWDA payment. Plaintiffs contend that of all their

27  claims, the MSEAP claim had the highest likelihood of success and was, in their opinion, the driver of

28  the settlement. Defendant reported that FAs allocated $38 million into MSEAP during the class period.

1  Thus, the net amount of the settlement represents 16% of Defendant's total exposure for that claim or

2  fully 25% based on the gross settlement figure. Plaintiffs submit that this amount is fair, reasonable and

3  adequate in light of the factors above and also considering that this settlement will be completely paid

4  out, i.e., the settlement is non-reversionary. (Decl. of Wynne.)

5  **E.    Extent of Discovery Completed**

6          Plaintiffs conducted extensive formal and informal discovery. Plaintiffs utilized newsletters and

7  set up a website to identify potential class members and gather information early on in the case.

8  Plaintiffs propounded extensive written discovery in terms of interrogatories and document requests

9  resulting on the production of over 45,000 documents. Additionally, Plaintiffs took six depositions of

10  Defendant covering a range of issues including, but not limited to, Defendant's payroll practices and

11  procedures, its business expense policies and practices and its Voluntary Allocation program. Plaintiffs

12  also received informal discovery from Defendant prior to mediation which allowed Plaintiffs to refine

13  their calculations and estimates. Based on the evidence and counsel's experience, Plaintiffs were able to

14  make an informed decision that settlement was in the best interests of the class. (Decl. of Wynne.)

15  **F.    Experience and View of Counsel.**

16          Courts do not substitute their judgment for that of the proponents, particularly when settlement

17  has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp.

18  1087 (DDC 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (NY 1979); *In re Armored Car Anti - Trust*

19  *Litigation*, 472 F. Supp. 1357 (ND GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan*

20  *Association*, 79 F.R.D. 571 (ED PA 1978).

21          While the recommendations of counsel proposing the settlement are not conclusive, the court

22  can properly take them into account, particularly if they have been involved in litigation for some

23  period of time, appear to be competent, have experience with this type of litigation, and significant

24  discovery has been completed. In this case, Plaintiffs and the class are represented by competent and

25  experienced counsel. Plaintiffs' counsel recommends the proposed settlement as fair, adequate and

26  reasonable to the class members and in their best interests.  (Decl. of Wynne; Decl. of Clapp.)

27  <u>**THE PROPOSED CLASS NOTICE IS THE BEST NOTICE PRACTICABLE**</u>

28          Pursuant to Fed.R.Civ.P. 23 (e)(1), "[t]he court must direct notice in a reasonable manner to all

class members who would be bound by the proposal." Pursuant to Fed.R.Civ.P. 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The parties have agreed, subject to Court approval, to have the Settlement Administrator mail notice via first class mail, postage prepaid, to the last-known addresses of the class members as updated through the U.S. Postal Service's NCOA database. This method meets the requirements of due process. *Overton v. Hat World, Inc.*, 2012 U.S. Dist. LEXIS 144116 at *5 (E.D. Cal. 2012) (noting that individual notice to class members' last known address meets the requirements of due process). The notice will also include a pre-printed change of address form and instructions on how to opt-out of the class. Returned mail with forwarding addresses will be re-mailed while returned mail without forwarding addresses will be skip traced to get an updated address and then re-mailed. For any class member that has not negotiated their check following final approval and distribution of the settlement funds, the Settlement Administrator shall mail reminder postcards at the 30th and 60th day following the initial mailing. Accordingly, the proposed notice plan complies with Rule 23 and due process.

## CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the class action settlement and certify the proposed classes.

Dated:  April 26, 2018                    WYNNE LAW FIRM


                                          /s/ *Edward J. Wynne*
                                          Edward J. Wynne
                                          Attorneys for Plaintiffs